*10/16/07*
*Adopted in full.*
*S/ Raymond J. Dearie*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
JOE HAND PROMOTIONS, INC.,

                Plaintiff,

     -against-

JAMES H. COLLINS, et al.,

                Defendants.
-----------------------------------------------------------------x

**REPORT AND**
**RECOMMENDATION**

**06-CV-6521 (RJD)**

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

Joe Hand Promotions, Inc. ("plaintiff"), commenced this action against JHC Enterprises Inc., d/b/a BKNY, a/k/a BKNY Bar & Lounge ("BKNY"), and James H. Collins ("Collins"), individually and as principal of BKNY (collectively, "defendants"), alleging violations of the Communications Act, 47 U.S.C. § 151 *et seq.* (2000). Specifically, the complaint alleges that on March 4, 2006, defendants intercepted plaintiff's scrambled satellite and/or cable transmission of a boxing match and exhibited it for their own financial benefit. See Complaint ("Compl.") at ¶¶ 18-19.

BKNY was properly served, but never filed an answer or otherwise appeared in the action. Accordingly, on June 12, 2007, the Honorable Raymond J. Dearie granted plaintiff's motion for default judgment and referred the application for damages to the undersigned magistrate judge. See 6/12/07 Default Judgment. For the reasons that follow, this Court recommends that plaintiff be awarded $4,775 in damages and costs against BKNY.[1]

---

[1] It appears that the James H. Collins who was served with the summons and complaint was not the James H. Collins affiliated with BKNY. See 6/14/07 Letter to the Court from James Howard Collins. Moreover, plaintiff failed to respond to this Court's order dated June 13,
(continued...)

## BACKGROUND

The March 4, 2006 boxing match between Jeff Lacy and Joe Calzaghe was broadcast live by closed-circuit television and encrypted satellite signal. Plaintiff acquired the right to distribute the match, along with undercard bouts, in New York State. See Compl. at ¶¶ 15-16; see also Plaintiff's Affidavit for Default ("Pl. Aff.") at ¶ 3. The signal carrying the match originated as a satellite transmission, and was re-transmitted to cable and satellite systems by satellite signal. See Compl. at ¶ 15. Any business in New York State seeking to show the tournament was required to pay plaintiff for the rights. See Pl. Aff. at ¶ 3. Only those authorized to do so were permitted to receive or broadcast the program. See Compl. at ¶ 18.

During the broadcast of the boxing match, Anthony Lazaro ("Lazaro"), an auditor working for an investigation agency retained by plaintiff, entered certain Brooklyn establishments that were exhibiting the match without plaintiff's permission. See Affidavit of Anthony Lazaro ("Lazaro Aff."), attached to Pl. Aff. as Exhibit C; see also Transcript of August 2, 2007 Hearing ("Tr.") at 4-7. The auditor counted the number of people in each establishment and submitted an affidavit based on his findings. See Lazaro Aff. Among the establishments visited by Lazaro was BKNY, located at 887 Fulton Street; according to Lazaro, there were approximately fifteen people at BKNY, where Lazaro observed, on two televisions, a portion of the Lacy-Calzaghe boxing match. See Lazaro Aff.

---

[1](...continued)
2007, directing that it file a supplemental submission addressing the legal and factual bases for holding Collins individually liable. See 6/13/07 Order. On August 1, 2007, Judge Dearie adopted this Court's July 6, 2007 report and recommendation that plaintiff's motion for a default judgment against Collins be denied, see 8/1/07 Order, and the claims against Collins were terminated.

Plaintiff contends that BKNY was not authorized to receive or broadcast the match and that BKNY used an illegal or modified satellite receiver and/or cable converter box to intercept plaintiff's broadcast and display it for its own financial gain. See Compl. at ¶¶ 18-19, 26-27.

## DISCUSSION

### I. Liability

When a default judgment is entered, the defendant is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997) (citing Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992)). The Court will first consider whether the complaint states a cause of action against BKNY under 47 U.S.C. § 605(a).[2]

Section 605 was enacted as part of the Cable Communications Policy Act of 1984,

---

[2] Although the complaint alleges that defendants violated 47 U.S.C. § 553 as well as 47 U.S.C. § 605(a), plaintiff seeks damages only under section 605(a). See Plaintiff's Memorandum of Law ("Pl. Mem.") at 5. Therefore, the Court need not consider liability or damages under section 553. See generally Int'l Cablevision, Inc. v. Sykes, 997 F.2d 998, 1009 (2d Cir. 1993) (damages are available under only one statutory section, notwithstanding defendant's possible violation of both); Kingvision Pay-Per-View, Ltd. v. Recio, No. 02 Civ. 6583 (JSM) RLE, 2003 WL 21383826, at *3 (S.D.N.Y. Jun. 11, 2003) (same); Entm't by J&J, Inc. v. Friends II, Inc., No. 02 Civ. 585 (JES) (RLE), 2003 WL 1990414, at *3 (S.D.N.Y. Apr. 25, 2003) (same). Plaintiff's complaint also alleges that defendants violated 47 U.S.C. § 605(e)(4), which prohibits, *inter alia*, the modification of "any electronic, mechanical, or other device or equipment . . . [that] is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services . . . ." Id. However, perhaps recognizing that section 605(e)(4) is aimed at *"distributors* of cable interception devices," Joe Hand Promotions, Inc. v. Hernandez, No. 03 Civ. 6132(HB), 03 Civ. 6133(HB), 03 Civ. 6134(HB), 03 Civ. 6316(HB), 03 Civ. 6317(HB), 03 Civ. 6318(HB), 2004 WL 1488110, at *3 (S.D.N.Y. Jun. 30, 2004) (emphasis in original), plaintiff does not now seek damages under section 605(e)(4). See generally Pl. Mem. at 5.

which amended the Communications Act of 1934, 47 U.S.C. § 151 *et seq.* Section 605(a) provides in pertinent part that:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communication to any person.

47 U.S.C. § 605(a).

Section 605's application to radio communications has been interpreted to include satellite transmissions. See Top Rank Inc. v. Tacos Mexicanos, No. 01 CV 5977, 2003 WL 21143072, at *3 (E.D.N.Y. Mar. 28, 2003) ("the term 'radio' includes satellite transmissions.") (internal quotation marks and citation omitted). As such, courts in this circuit have uniformly held that section 605 applies in circumstances where, as here, a party is charged with the unauthorized interception and exhibition of either satellite television programming, or cable television programming that originated as a satellite transmission. See id. at *3; Kingvision Pay-Per-View, Ltd. v. Recio, No. 02 Civ. 6583 (JSM) (RLE), 2003 WL 21383826, at *3 (S.D.N.Y. Jun. 11, 2003); Time Warner Cable of New York City v. Googies Luncheonette, Inc., 77 F.Supp.2d 485, 488-89 (S.D.N.Y. 1999); Time Warner Cable of New York City v. Taco Rapido Rest., 988 F.Supp. 107, 110 (E.D.N.Y. 1997). Here, plaintiff alleges that its satellite and cable broadcast of the boxing match originated as a satellite uplink. See Compl. at ¶ 15. Thus, plaintiff's complaint adequately alleges a violation of section 605(a).

## II. Damages

The Court must next consider the appropriate measure of damages to be awarded

plaintiff. Although a defendant, by defaulting, admits to all well-pleaded allegations pertaining to liability, the plaintiff nevertheless must provide evidence to substantiate its request for damages; it is within the Court's discretion to determine whether that burden has been met. See, e.g., Greyhound Exhibitgroup, 973 F.2d at 158; Tacos Mexicanos, 2003 WL 21143072, at *4.

Rather than prove actual damages, plaintiff seeks to recover $10,000 in statutory damages from BKNY pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), which provides for a minimum award of $1,000 for each violation and a maximum award of $10,000, "as the court considers just." Id. In determining the amount of damages to award in similar cases, courts have considered the extent of the illicit financial gain obtained by the defendants, and many have based their damage calculations on the number of patrons in an establishment during the illegal broadcast. See, e.g., Tacos Mexicanos, 2003 WL 21143072, at *4; Entm't by J&J, Inc. v. Mama Zee Rest. & Catering Servs., Inc., No. CV-01-3945 (RR), 2002 WL 2022522, at *3 (E.D.N.Y. May 21, 2002); Taco Rapido, 988 F.Supp. at 111. Although no consensus exists, some courts have required that establishments similar to BKNY's pay $50 per customer. See, e.g., Tacos Mexicanos, 2003 WL 21143072, at *4; Mama Zee, 2002 WL 2022522, at *3; Taco Rapido, 988 F.Supp. at 111. This Court considers that approach to be just. However, because, in this case, damages calculated based on the number of patrons (at most, fifteen[3]) would fall short of the statutory minimum, BKNY should be ordered to pay the statutory

---

[3] Lazaro's affidavit stated that he observed approximately fifteen "people," but during the hearing, he acknowledged that he did not know how many of the fifteen people were patrons, as opposed to employees. See Lazaro Aff; see also Tr. at 14.

minimum of $1,000.

Plaintiff also seeks to recover $100,000 in "enhanced damages" under section 605(e)(3)(C)(ii), which permits the Court to increase an award by up to that amount "in any case in which the court finds that the violation was committed wilfully and for purposes of direct or indirect commercial advantage or private financial gain . . . ." 47 U.S.C. § 605(e)(3)(C)(ii); see Compl. at ¶¶ 23, 29.

In this case, enhanced damages are warranted. There is no question that BKNY's illegal broadcast of the tournament was wilful and for financial gain; it is extremely unlikely that BKNY could have received the broadcast without taking some affirmative step to intercept the signal, see Pl. Aff. at ¶ 14, and it exhibited the tournament in connection with the operation of its commercial establishment. Indeed, courts have awarded enhanced damages in situations analogous to that presented here. See, e.g., Kingvision Pay-Per-View Ltd. v. Rodriguez, No. 02 Civ. 7972 (SHS), 2003 WL 548891, at *2 (S.D.N.Y. Feb. 25, 2003) (imposing enhanced damages of $1,000 each against a restaurant and against a tavern that illegally broadcast a boxing match); Recio, 2003 WL 21383826, at *5 (imposing enhanced damages of $2,000 on various small businesses that illegally broadcast a boxing match).

Nevertheless, the $100,000 award that plaintiff seeks is excessive in these circumstances. In determining the appropriate amount of enhanced damages in cases involving cable and satellite piracy by taverns and restaurants, courts consider factors "such as allegations of: (1) repeated violations over an extended period of time; (2) substantial unlawful monetary gains; (3) significant actual damages to plaintiff; (4) defendant's advertising for the

intended broadcast of the event; and (5) defendant's charging a cover charge or charging premiums for food and drinks." Rodriguez, 2003 WL 548891, at *2. While plaintiff has shown that BKNY wilfully broadcast the tournament, it has not alleged or established that BKNY specifically promoted its establishment as a venue to view the broadcast or that it significantly benefitted from the broadcast. Cf. Tacos Mexicanos, 2003 WL 21143072, at *5. Indeed, Lazaro noted that he was not subject to a cover charge when he entered BKNY's establishment, and the number of people in attendance was no more than fifteen despite an estimated capacity of thirty people. See Lazaro Aff. Recently, courts in this district have concluded that $3,000 in enhanced damages was appropriate for small commercial establishments illegally exhibiting boxing matches to a handful of patrons via one television set. See J & J Sports Prods., Inc. v. Rodrigues, No. 05 CV 5805 (RJD), 2007 WL 1726462, at *7 (E.D.N.Y. Apr. 19, 2007) (imposing enhanced damages of $3,000 against a barbershop that illegally exhibited boxing match to eight patrons); J & J Sports Prods., Inc. v. Echeverria, No. 06 CV 2894 (NG) (RML), 2007 WL 1160423, at *4 (E.D.N.Y. Mar. 16, 2007) (imposing enhanced damages of $3,000 against a barbershop that illegally exhibited boxing match to two patrons). Unlike those cases, BKNY exhibited the match on two television sets and had the additional opportunity to benefit commercially from drink sales during the match. Therefore, this Court would recommend $3,500 in enhanced damages, and would not award the maximum amount of enhanced damages.

In addition, plaintiff requests an award of costs pursuant to section 605. Specifically, plaintiff seeks to recover filing and service fees in the amount of $175 and $100, respectively.

See Attorney's Affidavit of Costs and Fees at 2-3.[4] Accordingly, $275 in costs should be assessed against defendant.

## CONCLUSION

This Court recommends that plaintiff be awarded $4,775 in damages and costs against BKNY.

Any objections to the recommendations contained herein must be filed with Judge Dearie on or before September 21, 2007. Failure to file objections in a timely manner may waive a right to appeal the District Court order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

The Clerk is directed to enter this Order into the ECF system and to send copies by Federal Express to JHC Enterprises, Inc., d/b/a BKNY, a/k/a BKNY Bar & Lounge, at 887 Fulton Street, Brooklyn, NY 11238.

**SO ORDERED.**

**Dated: Brooklyn, New York**
**September 7, 2007**

**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**

---

[4] Plaintiff's inquest papers do not seek attorney's fees.